2005 ND 70

**Clinton Alan HARTER, Petitioner
and Appellant,**

v.

**NORTH DAKOTA DEPARTMENT OF
TRANSPORTATION, Respondent
and Appellee.**

No. 20040281.

Supreme Court of North Dakota.

April 6, 2005.

Chad R. McCabe, Vinje Law Firm, Bismarck, ND, for petitioner and appellant.

Douglas B. Anderson, Assistant Attorney General, Office of Attorney General, Bismarck, ND, for respondent and appellee.

KAPSNER, Justice.

[¶ 1] Clayton Harter appeals the district court's judgment affirming a North Dakota Department of Transportation ("Department") hearing officer's decision to suspend his driving privileges for 91 days, arguing North Dakota statutory law does not provide for such a suspension and any ambiguities in the law should be construed against the Department and in favor of Harter. We find the statute provides for the suspension and the criminal rule of lenity does not apply in civil matters. We affirm.

I.

[¶ 2] Harter was stopped for speeding, making loud acceleration sounds, and crossing the lane-dividing line on May 23, 2004. He was 20 years old. The officer smelled alcohol and noticed Harter had bloodshot eyes and slurred speech. Harter passed all the field sobriety tests except the one-leg stand test. He was arrested for Minor in Consumption and detained for blood alcohol concentration testing. Tests indicated his blood alcohol concentration was .05% by weight, which is below the legal limit for driving for adults 21 or older but above the legal limit for persons under the age of 21.

[¶ 3] A hearing was held in front of a Department hearing officer, and Harter's driving privileges were suspended for 91 days under N.D.C.C. § 39–20–04.1(1)(a). Harter filed an appeal with the district court and the hearing officer's decision was affirmed.

II.

[¶ 4] Harter argues his license cannot be suspended under N.D.C.C. § 39–20–04.1(1)(a) because that section provides a penalty if the driver's alcohol concentration was "at least eight one-hundredths of one percent by weight and under eighteen one-hundredths of one percent by weight." The statute reads, in part:

1. After the receipt of a person's operator's license, if taken under section 39–20–03.1 or 39–20–03.2, and the certified report of a law enforcement officer and if no written request for hearing has been received from the arrested person under section 39–20–05, or if that hearing is requested and the findings, conclusion, and decision from the hearing confirm that the law enforcement officer had reasonable grounds to arrest the person and test results show that the arrested person was driving or in physical control of a vehicle while having an alcohol concentration of at least eight one-hundredths of one percent by weight or, with respect to a person under twenty-one years of age, an alcohol

concentration of at least two one-hundredths of one percent by weight at the time of the performance of a test within two hours after driving or being in physical control of a motor vehicle, the director shall suspend the person's operator's license as follows:

a. For ninety-one days if the person's driving record shows that, within the five years preceding the date of the arrest, the person has not previously violated section 39–08–01 or equivalent ordinance or the person's operator's license has not previously been suspended or revoked under this chapter and the violation was for an alcohol concentration of at least eight one-hundredths of one percent by weight and under eighteen one-hundredths of one percent by weight.

N.D.C.C. § 39–20–04.1.

[¶ 5] Harter argues part 1 refers to persons under the age of 21 with an alcohol concentration of at least .02% by weight, but subpart (a) does not, so subpart (a) must not apply to persons under the age of 21. He argues the statute is unambiguous, so no extrinsic aids are required for interpretation. The Department argues the language of part 1 referring to persons under the age of 21 should be read into the following subpart and urges this Court to consider legislative intent and find that the legislature intended to apply suspension to persons under the age of 21 who drive with an alcohol concentration of at least .02% by weight.

[¶ 6] This Court reviews "the record and decision of the administrative agency, not the ruling of the district court." *Phipps v. N.D. Dep't of Transp.,* 2002 ND 112, ¶ 6, 646 N.W.2d 704. We will affirm the agency's decision unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

*Id.;* N.D.C.C. § 28–32–46.

[¶ 7] "When an 'appeal involves the interpretation of a statute, a legal question, this Court will affirm the agency's order unless it finds the agency's order is not in accordance with the law.'" *Phipps,* 2002 ND 112, ¶ 7, 646 N.W.2d 704 (quoting *Erickson v. N.D. Dep't of Transp.,* 507 N.W.2d 537, 539 (N.D.1993)). Statutory interpretation is a question of law subject to full review upon appeal. *Phipps,* at ¶ 7.

Our primary objective in the interpretation of a statute is to ascertain the intent of the legislature. We look first to the language of the statute. If the language of a statute is clear and unambiguous, the letter of the statute cannot be disregarded under the pretext of pursuing its spirit. If a statute's language is ambiguous or of doubtful meaning, we may

consider extrinsic aids, including legislative history, along with the language of the statute, to ascertain legislative intent. *Id.* "A statute is ambiguous if it is susceptible to meanings that are different, but rational." *Public Service Commission v. Wimbledon Grain Co.*, 2003 ND 104, ¶ 20, 663 N.W.2d 186. This Court "presume[s] the Legislature did not intend an absurd or ludicrous result or unjust consequences," and "construe[s] statutes in a practical manner and give[s] consideration to the context of the statutes and the purposes for which they were enacted." *Id.* at ¶ 21.

[¶ 8] We conclude the statute is ambiguous and therefore look to the legislative history. The reference to "a person under twenty-one years of age" in part 1 was added during the 1997 legislative session at the request of the North Dakota Department of Transportation. The Department testified:

> The bill would implement "zero tolerance" for drivers under 21 years of age. While it is called "zero tolerance," the level required, and the level in this bill draft, is .02 blood alcohol content ("BAC").

> The requirement was mandated by Congress in the National Highway System bill. At least 37 states now have such laws; many of them were in place before the Congressional mandate. If we fail to enact a law by October 1, 1997, the state of North Dakota will lose five percent of our allocated federal aid highway funds (approximately $5 million) on October 1, 1998, and ten percent each year thereafter. The only way for us to get by without passing a "zero tolerance" law is for Congress to either change or repeal the requirement.

*Hearing on H.B. 1111 Before the Senate Transportation Comm.*, 55th N.D. Legis. Sess. (Feb. 27, 1997) (testimony of Keith C. Magnusson, Driver and Vehicle Services Director, North Dakota Department of Transportation). The amendment was in response to a mandate by Congress in the National Highway System bill requiring states to adopt a "zero tolerance" policy for drivers under 21 years of age or face a severe loss of federal highway funds. The statutory construction urged by Harter would result in no penalties for persons under the age of 21 who drive with an alcohol concentration of at least .02% by weight but less than .08% by weight. The legislature, faced with a loss of federal highway funds if they did not penalize persons under the age of 21 who drove with an alcohol concentration of at least .02% by weight, certainly did not intend such a result.

[¶ 9] We read the provision for persons under the age of 21 in part 1 as applying to each of the following subsections, even though it is not repeated throughout the statute. Any other construction would be "ludicrous and absurd." *State v. Laib*, 2002 ND 95, ¶ 13, 644 N.W.2d 878. Therefore subpart (a) must be understood, in the context of minors, to refer to alcohol content of at least .02% and under .18% by weight.

### III.

[¶ 10] Harter asks this Court to apply the rule of lenity if we find the statute is ambiguous. The rule of lenity "requires ambiguous criminal statutes to be construed in a defendant's favor." *Laib*, 2002 ND 95, ¶ 15, 644 N.W.2d 878. While this Court has frequently applied the rule of lenity in criminal cases, *see, e.g., State v. Higgins*, 2004 ND 115, ¶ 13, 680 N.W.2d 645; *State v. Beciraj*, 2003 ND 173, ¶ 14, 671 N.W.2d 250; *State v. Rue*, 2001 ND 92, ¶ 33, 626 N.W.2d 681, it has never been adopted in civil matters. This

Court has consistently held that suspension of a driver's license is not criminal in nature. *See State v. Barth,* 545 N.W.2d 162 (N.D.1996); *State v. Zimmerman,* 539 N.W.2d 49 (N.D.1995).

[¶ 11] Harter directs this Court to Louisiana cases that found suspension of a driver's license to be penal in nature and applied the rule of lenity. *See Nunnally v. State Dep't of Public Safety and Corrections,* 663 So.2d 254, 256 (La.App. 3 Cir., 1995) (statute revoking driving privileges is penal so interpretation rule applies); *Calamia v. Louisiana Dep't of Public Safety and Corrections,* 706 So.2d 152, 155 (La.App. 1 Cir., 1997) ("statutory provisions which result in the suspension of a driver's license must be strictly construed"). Harter was unable to direct this Court to any other jurisdiction that has expanded the application of the rule beyond criminal matters. We find the Louisiana approach to be a minority view and decline to adopt it in North Dakota.

### IV.

[¶ 12] We conclude N.D.C.C. § 39–20–04.1 provides for the suspension of the driver's license of a person under the age of 21 when that person operates a motor vehicle with an alcohol concentration of at least .02% by weight and affirm the suspension of Harter's driver's license.

[¶ 13] GERALD W. VANDE WALLE, C.J., and DALE V. SANDSTROM, and MARY MUEHLEN MARING, JJ., concur.

[¶ 14] The Honorable WILLIAM A. NEUMANN, a member of the Court when this case was heard, resigned effective March 14, 2005, and did not participate in this decision.