2006 ND 34

**Ronald STEIN, Claimant
and Appellant**

v.

**WORKFORCE SAFETY AND
INSURANCE, Appellee**

and

**Motor Coach Industries,
Inc., Respondent.**

**No. 20050196.**

Supreme Court of North Dakota.

Feb. 6, 2006.

Mark G. Schneider, Schneider & Schneider, Fargo, ND, for claimant and appellant.

Jacqueline Sue Anderson, Special Assistant Attorney General, Fargo, ND, for appellee.

KAPSNER, Justice.

[¶ 1] Ronald Stein appealed from a judgment affirming an order of Workforce Safety and Insurance ("WSI") establishing Stein's average weekly wage to be $520 per week for purposes of reinstating his disability benefits under N.D.C.C. § 65–05–09(1). We conclude WSI correctly applied the statute in calculating Stein's average weekly wage, and we affirm.

I

[¶ 2] On April 8, 1997, Stein injured his left knee while employed as a janitor with Motor Coach Industries in Pembina. WSI accepted liability and paid him associated benefits. On May 1, 1997, WSI determined Stein's average weekly wage at the time was $479 and paid him disability benefits based on that amount from April 16, 1997, to September 28, 1997. Stein returned to work on September 29, 1997, and his disability benefits were discontinued.

[¶ 3] Stein filed a reapplication for disability benefits on August 28, 2000, because he underwent knee surgery and was unable to work from July 28, 2000, through August 13, 2000. WSI determined Stein was entitled to temporary total disability benefits, and because Stein had worked

more than twelve consecutive months since he last received disability benefits, WSI recalculated his average weekly wage to be $520. Stein did not request reconsideration of this informal decision and WSI paid him disability benefits based on the $520 average weekly wage from July 28, 2000, through August 13, 2000.

[¶ 4] Stein returned to work on August 14, 2000, but he was laid off from work on November 3, 2000. In April 2001, he reapplied for disability benefits. Although WSI originally accepted Stein's reapplication for benefits, WSI reversed its informal decision. The parties eventually reached a stipulated settlement in which Stein waived disability benefits through December 31, 2001, and agreed to reinstatement of disability benefits effective January 1, 2002. WSI reinstated Stein's benefits based on his last calculated average weekly wage of $520 for July and August 2000. Stein then requested a recalculation of his average weekly wage, arguing that because his disability benefits had been reinstated effective January 1, 2002, more than twelve consecutive months after his last disability benefits were paid, he was entitled to recalculation of his average weekly wage based on his work from August 2000 through April 2001 when he reapplied for benefits. He claimed his average weekly wage for 2000 was approximately $700 per week. WSI refused to recalculate because Stein had not returned to work for twelve consecutive months since his last period of disability in July and August 2000, and because Stein had not appealed WSI's calculations of his average weekly wage in May 1997 and in September 2000. WSI also refused Stein's request for issuance of an appealable order on his request for recalculation of his average weekly wage.

[¶ 5] In December 2002, Stein requested a writ of mandamus asking the district court to order that WSI issue an appealable order on its refusal to recalculate Stein's average weekly wage. The district court ordered WSI "to recalculate the total disability benefits of Ronald Stein and issue an appealable Order." WSI issued an order again determining that, because he had not worked for twelve consecutive months before his latest request for disability benefits in April 2001 and because he did not appeal from the previous average weekly wage determinations in 1997 and 2000, Stein's average weekly wage was $520 per week. Stein requested an administrative hearing and WSI adopted the Administrative Law Judge's recommendation that its decision be affirmed. The district court also affirmed WSI's order, and this appeal followed.

## II

[¶ 6] Under N.D.C.C. § 28-32-46, the district court must affirm an order of an administrative agency unless it finds any of the following are present:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

On appeal from a district court's decision in an administrative appeal, we review the agency order in the same manner. *Rojas v. Workforce Safety and Ins.*, 2005 ND 147, ¶ 10, 703 N.W.2d 299. Questions of law, including the interpretation of a statute, are fully reviewable on appeal from an administrative decision. *Bjerklie v. Workforce Safety and Ins.*, 2005 ND 178, ¶ 9, 704 N.W.2d 818.

## A

[¶ 7] Stein argues that WSI, in recalculating his average weekly wage, misapplied N.D.C.C. § 65–05–09(1), which provides:

> If an injury causes temporary total or permanent total disability, the fund shall pay to the disabled employee during that disability a weekly benefit equal to sixty-six and two-thirds percent of the gross weekly wage of the employee, subject to a minimum of sixty percent and a maximum of one hundred ten percent of the average weekly wage in the state. If an employee is disabled due to an injury, that employee's benefits will be based upon the employee's wage and the organization benefit rates in effect on the date of first disability.
>
> 1. If an employee suffers disability but is able to return to employment for a period of twelve consecutive calendar months or more, that employee's benefits will be based upon the wage in effect at the time of the recurrence of the disability or upon the wage that employee received prior to the injury, whichever is higher. The organization benefit rates are those in effect at the time of that recurrence.

[¶ 8] Stein argues he is entitled to have his average weekly wage recalculated based upon his 2000 calendar year earnings of $36,426.64, because he had once returned to work for "twelve consecutive calendar months or more" when he filed his reapplication for disability benefits in August 2000. Although Stein had not returned to work for a period of twelve consecutive months when he reapplied for disability benefits in April 2001, he contends that he met the initial twelve-month work requirement after his first period of disability when he worked from September 29, 1997, through July 27, 2000. Stein argues he need not return to work for twelve consecutive months before he is entitled to a recalculation of his average weekly wage upon a recurrence of the disability after he has fulfilled the "threshold" requirement of twelve consecutive months of work. WSI contends Stein is not entitled to have his average weekly wage recalculated because a claimant must meet the requirement of twelve consecutive calendar months or more of work for each recurrence of the disability, and Stein did not fulfill that requirement when he reapplied for disability benefits in April 2001.

[¶ 9] In *Van Klootwyk v. Baptist Home, Inc.*, 2003 ND 112, ¶ 12, 665 N.W.2d 679 (quoting *Public Serv. Comm'n v. Wimbledon Grain Co.*, 2003 ND 104, ¶¶ 20–21, 663 N.W.2d 186), this Court summarized the rules of statutory construction:

> [O]ur duty is to ascertain the Legislature's intent, which initially must be sought from the statutory language itself, giving it its plain, ordinary, and commonly understood meaning. N.D.C.C. §§ 1–02–02 and 1–02–03. If statutory language is clear and unambig-

uous, the letter of the statute cannot be disregarded under the pretext of pursuing its spirit, because the Legislature's intent is presumed clear from the face of the statute. N.D.C.C. § 1–02–05. If statutory language is ambiguous, a court may resort to extrinsic aids, including legislative history, to interpret the statute. N.D.C.C. § 1–02–39. A statute is ambiguous if it is susceptible to meanings that are different, but rational. *Shiek v. North Dakota Workers Comp. Bureau,* 2002 ND 85, ¶ 12, 643 N.W.2d 721.

Statutes must be construed as a whole and harmonized to give meaning to related provisions, and are interpreted in context to give meaning and effect to every word, phrase, and sentence. [N.D.C.C. §§ 1–02–07 and 1–02–38(2)]; *Meljie v. North Dakota Workers Comp. Bureau,* 2002 ND 174, ¶ 15, 653 N.W.2d 62; *Doyle ex rel. Doyle v. Sprynczynatyk,* 2001 ND 8, ¶ 10, 621 N.W.2d 353. We presume the Legislature did not intend an absurd or ludicrous result or unjust consequences. [N.D.C.C. § 1–02–38(3) and (4)]; *McDowell v. Gillie,* 2001 ND 91, ¶ 11, 626 N.W.2d 666. We construe statutes in a practical manner and give consideration to the context of the statutes and the purposes for which they were enacted. [N.D.C.C. § 1–02–03]; *Grey Bear v. North Dakota Dep't of Human Servs.,* 2002 ND 139, ¶ 7, 651 N.W.2d 611.

[¶ 10] We conclude N.D.C.C. § 65–05–09(1) is unambiguous. Stein's argument that WSI must recalculate the employee's average weekly wage when there has been any recurrence of disability after an employee satisfies an initial twelve-month work requirement is not a rational interpretation of the statute because it ignores the plain, ordinary, and commonly understood meaning of the statute's terms.

Under N.D.C.C. § 65–05–09(1), an employee's benefits will be recalculated upon "the recurrence of the disability," but "the recurrence" is qualified by the phrase, "[i]f an employee suffers disability but is able to return to employment for a period of twelve consecutive calendar months or more." Therefore, a recalculation of average weekly wage occurs only if the employee is able to return to employment "for a period of twelve consecutive calendar months or more" before the recurrence of the disability that is the subject of the recalculation. If the employee's disability recurs after working for twelve consecutive calendar months or more, the employee is entitled to have his or her average weekly wage recalculated and to receive the higher of the average weekly wage in effect at the time of the recurrence, or the wage received prior to the injury.

[¶ 11] Although Stein attempts to support his construction of the statute by asserting workers compensation statutes must be liberally construed to avoid forfeiture and afford relief, we do not ignore the clear language of a statute under the guise of liberal construction. *Saari v. North Dakota Workers Comp. Bureau,* 1999 ND 144, ¶ 16, 598 N.W.2d 174. Moreover, Stein's construction of the statute could often lead to unjust consequences for an employee. In this case, Stein's average weekly wage had increased at the time of the latest recurrence of his disability after having worked for less than twelve consecutive months. If we were to accept Stein's interpretation of the statute, and his average weekly wage had actually decreased, he could have lost the benefit of the higher average weekly wage recalculated for July and August 2000 after having worked more than twelve consecutive months because N.D.C.C. § 65–05–09(1) directs WSI to recalculate and base bene-

fits only "upon the wage in effect at the time of the recurrence of the disability or upon the wage that employee received prior to the injury, whichever is higher." The obvious intent of the requirement that an employee return to work for twelve or more consecutive months before a recalculation is permitted is to provide a sufficient earnings history that accounts for short-term fluctuations in an employee's wages. *See Lucier v. North Dakota Workers Comp. Bureau*, 556 N.W.2d 56, 62 (N.D. 1996) (average weekly wage formula was "intended to smooth out fluctuations in wages caused by changing circumstances in a claimant's employment"). An extremely short period of employment followed by a recurrence would not provide WSI an opportunity to determine an "average weekly wage," which is defined as a "wage reasonably and fairly approximating the weekly wage lost by the claimant during the period of disability." N.D.C.C. § 65-01-02(5)(g).

[¶ 12] It is undisputed that Stein had not returned to work for a period of twelve consecutive months or more at the time of the latest recurrence of his disability. Consequently, WSI was not authorized by N.D.C.C. § 65-05-09(1) to recalculate his average weekly wage and award Stein benefits based on his average weekly wage at the time of the latest recurrence of his disability. We conclude WSI did not misapply N.D.C.C. § 65-05-09(1) in reinstating Stein's disability benefits.

## B

[¶ 13] Stein argues that WSI failed to follow the district court's instructions in the mandamus action, and because WSI did not appeal from that judgment, the judgment is res judicata and he should prevail in this case.

[¶ 14] The judgment ordered WSI "to recalculate the total disability benefits of Ronald Stein and issue an appealable Order." The judgment did not order WSI to recalculate Stein's average weekly wage to a specified amount. *See Gottbreht v. State*, 1999 ND 159, ¶ 10, 598 N.W.2d 794 ("Mandamus is available to compel an administrative agency to perform a ministerial duty the law requires the agency to perform, but not to direct how, or in whose favor, an agency decides a case"). WSI followed the court's instructions by recalculating Stein's average weekly wage to be $520 under its interpretation of N.D.C.C. § 65-05-09(1) and by issuing an appealable order. We conclude WSI did not violate the court's order.

## III

[¶ 15] Resolution of the other issues raised by the parties is unnecessary for disposition of this case. The judgment is affirmed.

[¶ 16] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING and DALE V. SANDSTROM, JJ., and JOEL D. MEDD, D.J., concur.

[¶ 17] The Honorable JOEL D. MEDD, D.J., sitting in place of CROTHERS, J., disqualified.